CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 09 2019
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 5:19cr4 |
| v. | ) |
| | ) |
| IZA MAR ROSARIO-CRUZADO, | ) By: Michael F. Urbanski |
| | ) Chief U.S. District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Iza Mar Rosario-Cruzado's Motion for Specific Performance of Plea Agreement, filed on June 11, 2019. ECF No. 52. The government responded on June 17, 2019. ECF No. 53. For the reasons explained in this Memorandum Opinion, the court **DENIES** defendant's motion.

I.

On January 8, 2019, defendant was arrested on a criminal complaint alleging one count of distribution resulting in death under 21 U.S.C. § 841(a)(1) and (b)(1)(C). ECF No. 1. The complaint alleges that defendant distributed one "bundle," weighing approximately one gram, of heroin and fentanyl to Richard Mansfield on December 12, 2017. ECF No. 1-1, at 6. Mansfield later shared this bundle with Matthew Jason Murphy, someone defendant never met or sold to directly. Id. at 5–6. The day after he received a share of the bundle, Murphy was found dead from acute heroin and fentanyl intoxication. Id. at 2–3. Mansfield pled guilty to distribution of heroin and fentanyl on September 12, 2018 pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) with an agreed range of seven to twelve years of incarceration. See United States v. Mansfield, No. 5:18-cr-22, ECF No. 8.

Defendant was indicted on February 5, 2019 and charged with distribution of heroin and fentanyl resulting in death. ECF No. 17. This crime carries a statutory sentencing range of 20 years to life. 21 U.S.C. § 841(b)(1)(C). Defendant states in her brief in support of motion (and government does not deny) that defendant and the government reached a plea agreement whereby she would plead guilty to the lesser included offense of distribution under 21 U.S.C. § 841(b)(1)(C), with an agreed range of eight to fourteen years. ECF No. 52, at 3 (defendant's brief in support of motion); ECF No. 53, at 1 (government's brief in opposition to the motion). Defendant signed this written agreement on May 1, 2019; a change of plea hearing was set for May 8, 2019. ECF No. 44 & 46. The day before the scheduled hearing, the government cancelled the scheduled hearing and notified counsel that it would not proceed with the plea agreement. ECF No. 52, at 3; ECF No. 53, at 1. Counsel for defendant states in her motion that, to her knowledge, this is due not to any change in circumstance, but simply because of a "change of heart" within the U.S. Attorney's Office. ECF No. 52, at 2.

## II.

Defendant argues for specific performance of the plea agreement, drawing on Virginia contract law to support her motion. ECF No. 52, at 4. She argues that, under Virginia law, a party may be bound by an agreement even where a formal contract is contemplated, but not executed. Id. at 4. Defendant points to Snyder-Falkingham v. Stockburger, 249 Va. 376, 385, 457 S.E.2d 36, 37 (1995), in which the Virginia Supreme Court recognized that a settlement agreement was binding where the parties had agreed to all terms and acted affirmatively to enter into the agreement, even though one of the parties refused to sign the subsequently written agreement. Id. at 5. Similarly, defendant argues that here, the parties had agreed on all

2

material terms of what was essentially a contract between the defendant and the government. Id. The only element missing was the government's signature. Id. Defendant argues that this was, essentially, an offer from the government, and, "[w]here the offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract." Chang v. First Colonial Sav. Bank, 242 Va. 388, 391 (1991) (holding that a newspaper advertisement constituted an offer, which the plaintiffs had accepted).

The government responds that language within the plea agreement made clear that the plea agreement would not be binding on the government until the government signed it. ECF No. 53, at 1–2. See ECF No. 52-1, at 11 ("I understand the United States has not accepted my offer until it signs the agreement"). The government further argues that while courts "apply contract principles to analyze and interpret plea agreements," a plea agreement is not only a contract between two parties but "necessarily implicates the integrity of the criminal justice system." United States v. Cvijanovich, 556 F.3d 857, 862 (8th Cir. 2009). Thus, plea agreements "require[] the courts to exercise judicial authority in considering the plea agreement." Id.

### III.

This motion presents an undecided area of law within the Fourth Circuit. Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1298 (4th Cir. 1992), stated in a footnote that, "The state may withdraw a plea offer at any time before it is accepted or detrimentally relied upon." Here, however, defendant had accepted the plea agreement when the government withdrew it. Given this, the Fourth Circuit has scant guidance to offer. Other circuits

3

presented with similar facts have held that a plea agreement that has not been entered and accepted by the trial court does not bind the parties. See, e.g., United States v. Norris, 486 F.3d 1045, 1052 (8th Cir. 2007) ("We hold that a defendant generally has no right to specific performance of a plea agreement where the Government withdraws from the agreement before the defendant's associated guilty plea is accepted by the district court."); United States v. Kuchinski, 469 F.3d 853, 858 (9th Cir. 2006) ("...[a] plea agreement that has not been entered and accepted by the trial court does not bind the parties." (citation omitted)); United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992) ("We hold that neither the defendant nor the government is bound by a plea agreement until it is approved by the court."); United States v. Alvarado-Arriola, 742 F.2d 1143 (9th Cir. 1984) (holding that where a trial court rejects a plea agreement because of the actions of the defendant, the government is no longer bound by the terms of the agreement); United States v. Wessels, 12 F.3d 746, 753 ("[Defendant] is not entitled to relief due to the government's withdrawal of its consent to the plea agreement. Whatever benefits [defendant] intended to reap as a result of the agreement were entirely contingent upon the approval of the district court."); United States v. Ocanas, 628 F.2d 353, 358 (5th Cir. 1980) ("Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time.").

Recent Supreme Court jurisprudence, however, and subsequent appellate court caselaw, has cast doubt on the premise that a plea agreement that has not been accepted by the court is still fluid and nonbinding. In United States v. Hyde, 520 U.S. 670 (1997), the Supreme Court ruled that a defendant could not withdraw a plea of guilty without a fair and

4

just reason when the court had accepted the plea, but deferred judgment on the plea agreement. Following cases implemented this reasoning and expanded upon it. See, e.g., United States v. Grant, 117 F.3d 788, 791 (5th Cir. 1997) (examining Hyde, holding that a defendant must give a fair and just reason to withdraw a guilty plea that had been entered but not yet accepted, and recognizing that the holding in United States v. Ocanas, 628 F.2d 353, 358 (5th Cir. 1980), that either party to a plea agreement could modify its position until the plea and plea bargain were accepted by the court was contrary to its subsequent decision in United States v. Foy, 28 F.3d 464 (5th Cir. 1994)); United States v. Mower, 110 F. Supp. 3d 1196, 1201 (D. Utah Feb. 18, 2015) (enforcing an unwritten plea agreement and refusing to permit repudiation of the agreement by the government after the agreement had been informally presented to the judge). Hyde and many of the following above cited cases, however, address what rules apply when a defendant attempts to withdraw from a plea agreement. Here, it is defendant attempting to enforce a plea agreement, while the government contends there was never an agreement at all. Hyde, 520 U.S. at 671 ("After the defendant in this case pleaded guilty, pursuant to a plea agreement, the District Court accepted his plea but deferred decision on whether to accept the plea agreement. The defendant then sought to withdraw his plea.").

Mower is the only example in the above cited cases of a defendant attempting to enforce a plea agreement that the government later rescinded. 110 F. Supp. 3d at 1197. In Mower, the parties engaged in plea negotiations prior to a scheduled jury trial and, just as the court was preparing to take the bench to commence jury selection, appeared in the judge's chambers to advise the court that serious negotiations were underway that might resolve the

5

case. Id. Jury selection was continued; the parties then met to work out the material terms of a plea agreement. After more negotiations, the parties appeared before the court in chambers and confirmed that an agreement had been reached. Id. at 1198. The court set a hearing for later the same day and continued the trial. Id. At that hearing, however, the government informed the court that there might be an "impasse." Id. The government later filed a notice of withdrawal of all plea offers previously extended. Id.

The Mower defendant filed a motion not to enforce the plea agreement, but to have the court hear the plea to which both parties had orally agreed. Mower, 110 F. Supp. 3d at 1198. The court, in examining these issues, looked to both constitutional and contractual principles, but focused on the contractual side of the plea negotiation process as "the defense [did] not bring this motion claiming there were constitutional violations . . . . " Id. The court noted that a contract is enforceable where there is a "meeting of the minds" on at least the "essential terms" of the contract. Id. at 1199–1200. In discussing authority cited by the government stating that plea agreements are only enforceable upon court approval, the court deemed both Norris and Ocanas to no longer be good law, as the reasoning of both had been "subverted" by Hyde (see above). Id. at 1200. The court then granted the defendant's motion, ruling that the act of meeting in front of the judge and "shaking hands" was "tantamount to the judge accepting a plea in court." Id.

Much of Mower's analysis of contract principles bears weight here; nevertheless, significant factual discrepancies distinguish Mower from the situation at hand. Mower's parties had presented their agreement to the court; the judge had witnessed them shake hands upon the conclusion of negotiations. 110 F. Supp. 3d at 1197. Mower's ruling was born largely from

6

the court's conclusion that public policy "should not allow the government to withdraw the deal after an agreement had been reached and represented to the court to be final with only the 'tweaking of a couple sentences' left to be done." Id. at 1202. As it turns out, the language of the plea agreement at hand clarifies the immediate question without the court needing to address the larger issue of when a plea agreement becomes binding on the government.

If the court approaches the plea agreement with contract principles in mind, as urged by defendant, defendant's argument that acceptance by defendant constituted completion of the contract must be rejected. As defendant is aware, Paragraph (E)(2) of the plea agreement provides "I understand my signature on this agreement constitutes a binding offer by me to enter into this agreement. I understand the United States has not accepted my offer until it signs the agreement." Defendant argues that an offer that leaves nothing open for negotiation becomes a complete contract upon acceptance. Chang v. First Colonial Sav. Bank, 242 Va. 388, 391, 410 S.E.2d 929, 930 (1991). The Second Restatement of Contracts, however, states clearly that the offeror is the master of his offer. Restatement (Second) of Contracts § 30 (1981). See Kraft Foods N. America, Inc., v. Banner Eng'g & Sales, Inc., 446 F. Supp. 2d 551, 569 (E.D. Va. 2006) ("[T]he determination whether an offer inviting acceptance has been made is controlled by the expressed intention of the offeror."). If the plea agreement constituted the government's offer to defendant, as defendant argues, then the government had the power to include any conditions of acceptance it wished, including a term providing that a contract would not be formed until signing.

The court finds defendant's argument that Paragraph (E)(2) is ambiguous due to the first two words, "I understand," to be unconvincing. Defendant argues that, elsewhere in the

7

agreement, "I understand" prefaces general statements of law that could be omitted without changing the nature of the agreement. Defendant urges the court "read [the contract] as a whole with its provisions read in context" and consider Paragraph (E)(2) to be not "a binding component of the agreement between the parties, but a statement—albeit an incorrect one— of the law." ECF No. 52 (quoting Stacy v. Stacy, 53 Va. App. 38, 48 (2008)).

The fact that these two words are used in other paragraphs to advise defendant of certain provisions of law, however, does not give the words any special meaning within the plea agreement. The words "I understand" are used throughout the agreement to inform defendant of a number of terms, including to advise defendant of the scope of the agreement and the consequence of violating the agreement. See, e.g., ECF No. 52-1, at 9 ("I understand if I fail to plead guilty in accordance with this agreement or withdraw my plea(s) of guilty any statements I make . . . may be used against me in this or any other proceeding."); & 12 ("I understand this agreement does not apply to any crimes or charges not addressed by this agreement."). By signing a term that begins with the words "I understand," defendant is agreeing that she understands that the plea agreement exists under the conditions that term outlines. Paragraph (E)(2) states clearly that the plea agreement is not binding on the government until the government signs it. Defendant evidenced her acceptance of this term when she signed the plea agreement.

While the express terms of the plea agreement support the government's position, the issue cannot be resolved on contract principles alone. Plea agreements are governed by Rule 11 of the Federal Rules of Criminal Procedure, which require court approval to be effective. Indeed, the proposed plea agreement in this case included a specific sentencing range pursuant

to Rule 11(c)(1)(C). If accepted by the court, the sentence specified in a Rule 11(c)(1)(C) plea agreement is binding on the court, but if not accepted, the defendant may withdraw her plea. Further, Rule 11(d)(1) provides that a defendant may withdraw a guilty plea before it is accepted by the court for any reason or no reason. In other words, plea agreements are not simply creatures of contract law. Rather, the integrity of our criminal justice system allows each side to withdraw from a plea agreement before it is accepted by the court.

IV.

For the above reasons, the court **DENIES** defendant's motion for specific enforcement of the plea agreement. ECF No. 52.

An appropriate Order will be entered.

Entered: 07-09-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge